# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 2386 | **DATE** | 9/27/2010 |
| **CASE TITLE** | Ohio National Life Assurance Corporation v. Davis et al | | |

**DOCKET ENTRY TEXT**

The Court grants Morady's Motion to Dismiss Counts III and IV.

■[ For further details see text below.]   Docketing to mail notices.

## STATEMENT

Plaintiff Ohio National Life Assurance Corporation ("Ohio National") brought suit against Douglas Davis ("Davis"), Mavash Morady ("Morady"), Shirlee Davis ("Shirlee Davis"), Christiana Bank & Trust Company ("Christiana Bank"), and Steven Egbert ("Egbert") (collectively "Defendants") for allegedly carrying out a fraudulent life insurance scheme. Ohio National has claims for declaratory judgment (Count I), fraud (Count II), violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Count III), unjust enrichment (Count IV), and conspiracy (Count V). Morady moves to dismiss Counts III and IV of Ohio National's Complaint for failure to state a claim upon which relief can be granted. For the reasons stated below, the Court grants Morady's Motion to Dismiss Counts III and IV.

The following facts are taken from Ohio National's Complaint and are assumed to be true for purposes of this Motion to Dismiss. *See Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir. 1995). Ohio National is authorized to sell life insurance policies in Illinois. (Compl. ¶ 1.) Davis, an attorney and independent insurance broker, allegedly traveled to church meetings in the Chicago area and manipulated elderly citizens to apply for Ohio National life insurance policies. (Compl. ¶ 9.) Davis would then convince the elderly citizens to sign documents creating an irrevocable trust where Davis was the Trustee and the Trustee was designated as the owner of the life insurance polcies. (Compl. ¶¶ 9, 11.) According to Ohio National, Davis created these trusts to obtain a financial interest in the lives of the insureds. (Compl. ¶ 12.) Davis would then use this financial interest to obtain loans or sold the interest to investors. (Compl. ¶ 12.). Morady's involvement in the scheme included signing the insurance applications and misrepresenting the financial status of the elderly applicants in order to receive commission payments from Ohio National. (Compl. ¶ 10.) This lawsuit centers around how Defendants used this scheme to fraudulently obtain insurance policies for five Illinois citizens.

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff. *See Murphy*, 51 F.3d at 717. To

# STATEMENT

state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 129 S. Ct. at 1950. When there are well-pleaded factual allegations, the Court assumes their veracity and then determines if they plausibly give rise to an entitlement to relief. *Id.*

Morady moves to dismiss Count III of Ohio National's Complaint, which alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), because Ohio National lacks standing. Further, Morady claims that Count IV, alleging unjust enrichment, fails to state a claim because the existence of a written contract between Morady and Ohio National precludes relief under a theory of unjust enrichment. The Court will address each Count in turn.

First, the ICFA protects consumers against unlawful competition and unfair or deceptive acts or practices. 815 ILCS § 505/2. Morady contends that Ohio National lacks standing to bring an action under the ICFA because it is not a "consumer" as defined in the Act and there is not the required "consumer nexus." To assert a claim under the ICFA, the plaintiff must be a "consumer" or plead facts to satisfy the "consumer nexus" test. *See Williams v. Electronics Games, Inc. v. Garrity*, 366 F.3d 569, 579 (7th Cir. 2004). The ICFA defines a "consumer" as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of trade or business but *for his use or that of a member of his household*." *Id.* § 505/1(e) (emphasis added). In this case, Ohio National does not contest that it is not a "consumer" under the definition of the Act. (R. at 46, Resp. to Mot. to Dismiss 6) (admitting it is a "non-consumer" business).

Thus, Ohio National's standing rests upon whether it has pled facts to satisfy the "consumer nexus" test. Ohio National can advance an ICFA claim if Morady's alleged fraudulent conduct involves trade practices directed to the market generally or otherwise relates to consumer protection issues. If there is a sufficient link between the alleged unlawful conduct and consumer protection concerns, a non-consumer can still advance an ICFA claim. *See Athey Prods. Corp. v. Harris Bank Roselle*, 89 F.3d 430, 437 (7th Cir. 1996); *see, e.g., Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 777 (N.D. Ill. 2008) (Manning, J.). Here, Morady's conduct was not directed at the market in general because the allegations against Morady only implicate misrepresentations made to Ohio National about familiarity with the proposed insureds and the status of their financial records. *See, e.g., MacNeil Automotive Prods. Ltd. v. Cannon Automotive Ltd.*, 08 C 139, 2010 WL 2136661, at *4 (N.D. Ill. 2010 May 25, 2010) (Gottschall, J.). Nor does Morady's conduct implicate consumer protection concerns, which includes conduct that could mislead or confuse consumers. *Id.;see, e.g. Downers Grove Volkswagon, Inc. v. Wigglesworth Imports, Inc.*, 190 Ill. App. 3d 524, 137 Ill. Dec. 409, 546 N.E.2d 33, 35-36, 41 (1989) (circulating deceptive pamphlets is consumer protection concern). As stated above, Ohio National claims that Morady acted in conjunction with Davis to cause injury to the Illinois citizens that applied for the life insurance policies. Simply put, under the allegations of the Complaint relating to Count III, Morady only deceived Ohio National, and had no direct involvement with consumers. Ohio National therefore lacks standing to sue Morady under the ICFA.

Second, Morady claims that Ohio National is barred from bringing a claim for unjust enrichment under Count IV because Morady and Ohio National had a contract controlling their relationship. When parties have a valid contract, a claim for unjust enrichment cannot be made unless it "falls outside the contract." *Utility Audit, Inc. v. Horace Mann Serv. Corp.*, 383 F.3d 683, 688-89 (7th Cir. 2004). To decide whether a claim falls outside

| STATEMENT |
|---|
| a contract, the Court considers the subject matter of the contract, not the specific provisions. *Id.*; *First Commodity Traders, Inc. v. Heinold Commodities, Inc.*, 766 F.2d 1007, 1011 (7th Cir. 1985). Ohio National's allegations – that Morady misrepresented the financial status of potential insureds, falsely indicated familiarity with them, and used the policies as collateral to procure loans – fall squarely within the subject matter of the contract, namely Morady's relationship as an insurance broker to Ohio National. (R. 35, Morady's Mot. to Dismiss, Exh. A.) In sum, the unjust enrichment claim matches the subject matter of the contract, and accordingly, is dismissed.<br><br>   For the reasons stated above, Counts III and IV are dismissed without prejudice. |